## LYONS v. LIBERTY NAT. BANK.
### No. 6661.

United States Court of Appeals for the
District of Columbia.

Decided Jan. 18, 1937.

See, also, 62 App.D.C. 204, 65 F.(2d) 837.

James T. Crouch, of Washington, D. C., for appellant.

Charles L. Frailey and Thomas P. Littlepage, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice and ROBB, VAN ORSDEL, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

In this case the plaintiff (appellant) John A. Lyons, brought suit against the defendant (appellee) Liberty National Bank, to recover the sum of $1,500.00, together with interest and costs, which sum it was alleged had been wrongfully paid out of escrow. The defendant admitted the deposit of the fund in escrow and the payment out, but asserted that the latter was made according to the terms of the escrow. The case was tried to a jury. At the close of the defendant's case the trial judge on the defendant's motion directed a verdict in the defendant's favor. From the judgment entered upon this verdict the plaintiff took this appeal. The errors assigned and argued raise two questions, one as to the propriety of the directing of the verdict, the other as to the correctness of the exclusion of certain evidence.

The plaintiff and others had been indicted in the United States District Court for the Eastern District of Virginia for a conspiracy to violate, and violation of, the Federal Prohibition and Tariff laws, and the plaintiff, in July, 1930, had been arraigned. On November 12, 1930, he retained to represent him three lawyers, and signed with two of them the following "memorandum of agreement" in respect of fees:

"Memorandum of agreement between C. B. Slemp, John W. Price, and Rees B. Gil-

lespie, attorneys at law, parties of the first part, and John A. Lyons and others, parties of the second part,

"Whereas, the party of the second part has been jointly indicted in the United States District Court at Norfolk, Virginia, under the charge of a conspiracy to violate the Volstead Act (27 U.S.C.A. § 1 et seq.), and

"Whereas, the parties of the second part desire to employ the parties of the first part as counsel to undertake to see if the cases may not be compromised or handled upon such terms as will be agreeable to parties of the second part, parties of the second part pay to the parties of the first part cash retainer fee of one thousand dollars ($1000.00) and are to pay fifteen hundred dollars ($1500.00) additional, when, as and if the case is disposed of on terms that are acceptable to parties of the second part. The fifteen hundred dollars ($1500.00) is to be deposited in escrow in the Liberty National Bank in Washington, D. C. under an escrow agreement, a copy of which is hereto attached. The parties of the second part agree to pay travelling expenses and actual outlay expended in looking after this business.

"This the 12th day of November, 1930.
    "(Signed)   C. B. Slemp
                by Jno. W. Price
    "(Signed)   Jno. W. Price
    "(Signed)   John A. Lyons."

The $1,000.00 cash retainer fee was paid on November 13. On the same day the plaintiff, accompanied by two of his lawyers, placed the additional $1,500.00 in escrow with the defendant and left with it a copy of an escrow agreement between himself and the three attorneys. That agreement was in the following terms:

"This agreement entered into between C. B. Slemp, John W. Price and Rees B. Gillespie of Washington, D. C., parties of the first part and John A. Lyons of New York, New York, party of the second part.

"Whereas, the party of the second part has employed the parties of the first part as attorneys at law to look after a certain case on the docket of the United States District Court at Norfolk, Virginia, and

"Whereas, fifteen hundred dollars ($1,500.00) cash is to be paid as an additional fee when, as and if the case in the United States District Court is disposed of upon terms that are acceptable to the party of the second part, if the case is disposed of upon terms acceptable to the party of the

second, the fifteen hundred dollars ($1,500.00) deposited herewith in escrow in The Liberty National Bank shall be turned over to the parties of the first part by the Liberty National Bank upon written notification to the Bank by the party of the second part that the conditions of this agreement have been satisfactorily complied with by the parties of the first part; and such notice to the bank will be a full acquittance and release to The Liberty National Bank of any and all liability of any kind or character as the escrow agent for the parties hereto.

"The parties hereto appoint The Liberty National Bank as the joint Escrow Agent to hold the said fifteen hundred dollars ($1,500.00) upon the terms herein stated, and deposit the said fund with a copy of this agreement with said bank. If the case is not disposed of in said United States District Court by January 1, 1932, then The Liberty National Bank may turn over said fund to the party of the second part, unless the time is further extended by mutual agreement.

"Given under our hands this the 13th day of November, 1930.
            "(Signed)
                "John A. Lyons.
                "C. B. Slemp.
                "John W. Price.
                "Rees B. Gillespie."

The plaintiff and his lawyer Price thereafter held conferences with the United States District Attorney for the Eastern District of Virginia. On November 18, the plaintiff pleaded guilty, upon the advice of Price. On November 21, 1930, he was sentenced to a year and a day in the penitentiary. Immediately after his release on September 7, 1931, he applied to the defendant for return of the $1,500.00. The defendant had in the meantime paid out the deposit to the plaintiff's lawyers, without written notification from the plaintiff that the conditions of the escrow agreement had been satisfactorily complied with.

In respect of the first question raised by the assignment of errors: Apparently the contention of the plaintiff is that he made a contract with his lawyers to obtain for him a continuance of the indictments and a suspended sentence or a fine, and that since such a result was not accomplished, he was not obliged to pay the additional $1,500.00. The plaintiff testified that prior to the execution of the fee memorandum and the escrow agreement he

told Price and Gillespie that he wanted a continuance of his "case" with an eventual fine or suspended sentence. This testimony fails to constitute evidence sufficient to submit to a jury, because it does not indicate that the lawyers assented to the plaintiff's proposition. None of the plaintiff's evidence tends to prove such assent, and the evidence for the defendant was to the effect that the lawyers had told the plaintiff that since several were indicted for violation of the Volstead Act, 27 U.S.C.A. § 1 et seq., it would be foolhardy to ask for a continuance, and that the best that could be done was to ask the District Attorney to recommend a sentence of a year in jail upon a plea of guilty, and that to this the plaintiff agreed. The plaintiff admitted, on examination by the trial judge in the instant case, that he knew there was nothing to be gained by a trial of the indictments, that he was guilty, and that he employed the lawyers to get him out as best they could. There is no showing here of a meeting of the minds of the plaintiff and his lawyers in a contract for a continuance and fine or suspended sentence.

█ The negotiations of the parties were integrated, so far as the liability of the defendant is concerned, in the escrow agreement, which unambiguously provides not for the accomplishment of a particular result, but for the disposition of the indictments upon terms acceptable to the plaintiff. Under the contract as thus worded, the plaintiff was entitled to a performance acceptable to him personally, as distinguished from acceptable to some objective standard. American Music Stores v. Kussel (C.C.A.) 232 F. 306, L.R.A. 1916F, 882; Thompson-Starrett Co. v. La Belle Iron Works (C.C.A.) 17 F.(2d) 536, certiorari denied, 274 U.S. 748, 47 S.Ct. 763, 71 L.Ed. 1330; Shepherd v. Union Central Life Ins. Co. (C.C.A.) 74 F.(2d) 180. If the disposition of the indictments was in fact acceptable to the plaintiff, however, he could not lawfully prevent payment of the $1,500.00 by refusal to notify the defendant that the conditions of the escrow agreement had "been satisfactorily complied with." American Music Stores v. Kussel, supra, and cases therein cited.

█ The plaintiff therefore had the burden of presenting evidence, sufficient for jury consideration, that the indictments against him were not disposed of upon terms acceptable to him. This he failed to do. He relies upon his testimony that he had told the attorneys he wanted a continuance with an eventual fine or suspended sentence, that in a conference with the District Attorney there was some discussion "as to the probability of a continuance, but Major Kear [the District Attorney] was adamant in the matter," and that on the morning sentence was imposed Price asked him if he would release the money and he replied "under no circumstances because it would not be equitable because they had not been able to accomplish what they agreed to do." On the other hand, there was, as above indicated, evidence for the defendant that the plaintiff had agreed with his lawyers that they should ask the District Attorney to recommend a year in jail; and there was also evidence for the defendant that the plaintiff participated in conferences with the District Attorney, and that when that officer finally agreed to recommend a sentence of a year in jail, the plaintiff expressed himself as well pleased. There was also evidence that at the time of the sentence, when the District Attorney recommended a year in jail, the plaintiff told the judge that he preferred a penitentiary sentence, which was imposed. Price testified that the plaintiff then thanked him, and thanked the District Attorney for fair treatment. Other witnesses told of the plaintiff's proposition to the District Attorney to plead guilty if a short sentence would be recommended, and of the plaintiff's apparent satisfaction with the arrangement.

█ In this state of the evidence no reasonable juryman could conclude that the indictments were not disposed of upon terms actually acceptable to the plaintiff. On the contrary, the evidence shows conclusively that he was satisfied, but declined Price's request to release the money in escrow on the theory that he had a contract entitling him to the accomplishment of a continuance and a suspended sentence or fine. Having no such contract, and having expressed and conducted himself in a manner indicating full satisfaction with the disposition of the indictments, the plaintiff's refusal to release the fund was arbitrary. A verdict for the plaintiff must properly have been followed by the granting of a new trial. Under such circumstances the judge correctly withheld the case from the jury. Faucett v. Bergmann, 57 App.D.C. 290, 22 F.(2d) 718. As the Supreme Court said in Pennsylvania Railroad Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819:

"It repeatedly has been held by this court that before evidence may be left to the jury, 'there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' Pleasants v. Fant, 22 Wall. 116, 120–121 [22 L.Ed. 780]. And where the evidence is 'so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury.' Gunning v. Cooley, 281 U.S. 90, 94 [50 S. Ct. 231, 74 L.Ed. 720]; Patton v. Texas & Pacific Ry. Co., 179 U.S. 658, 660 [21 S. Ct. 275, 45 L.Ed. 361]. The rule is settled for the federal courts, and for many of the state courts, that whenever in the trial of a civil case the evidence is clearly such that if a verdict were rendered for one of the parties the other would be entitled to a new trial, it is the duty of the judge to direct the jury to find according to the views of the court. Such a practice, this court has said, not only saves time and expense, but 'gives scientific certainty to the law in its application to the facts and promotes the ends of justice.' "

■ The second point in the case concerns the admissibility of evidence in regard to indemnity required of the lawyers by the defendant bank. The plaintiff's counsel asked the defendant's witness Price the following question:

"As a matter of fact, before the Liberty National Bank did consent to turning the fifteen hundred dollars over to you and Mr. Slemp and Mr. Gillespie, the bank required that you furnish a bond to protect the bank from liability in the event they had no right to turn it over from the plaintiff Lyons?"

Counsel for the defendant objected to the question, and the objection was sustained. The ruling was correct. Evidence that the defendant had indemnified itself was incompetent in respect of its liability to the plaintiff under the escrow agreement. Capital Construction Co. v. Holtzman, 27 App.D.C. 125; 1 Wigmore, Evidence (2d Ed. 1923) § 282, 1934 Supp. § 282a. These authorities have to do with insurance against a class of risks, as distinguished from indemnity against liability on a particular claim, but we see no basis for distinction. Such evidence is properly excluded not upon the theory that it has no logical relevancy, but upon the ground that it will motivate a jury to be reckless in awarding damages regardless of a defendant's liability according to law. To the effect that evidence of indemnification against liability on a particular claim is inadmissible, see Zimmerle v. Childers, 67 Or. 465, 136 P. 349; Beazley v. McEver (Tex.Civ.App.) 238 S.W. 949.

The judgment of the trial court is Affirmed.