McKEAGUE, Circuit Judge,
concurring.
I concur in the judgment, but write separately to explain that I likely would have voted to affirm Davis’s drug-conspiracy conviction had the issue of identity been raised on appeal. The Government did not argue on appeal that the modus-operandi evidence was properly admitted in order to show, among other things, the identity of the person who sold cocaine to Hamlett. Given the Government’s strategic decision to argue that the district court was justified in admitting the evidence to show intent, but to forgo the issue of identity, I concur in reversing the conspiracy conviction.
I
The district court instructed the jury that it could consider the testimony about *530 the prior uncharged drug sale as part of a pattern of related conduct. Evidence of pattern, also referred to as modus-operan-di evidence, can be used to prove identity. The rationale for permitting the evidence rests upon the idea that if the method of operation employed in all of the crimes is essentially identical and sufficiently unique, it can be said to be the “signature” of the defendant. “[W]hen the issue is one related solely to identity, this Court has overwhelmingly approved the admission of ‘other acts’ evidence.” United States v. Perry, 488 F.3d 642, 648 (6th Cir.), cert. denied, 547 U.S. 1139, 126 S.Ct. 2045, 164 L.Ed.2d 799 (2006).
To qualify as modus-operandi evidence, the similarity between the prior crime and the charged offense must be striking and the method must amount to a signature. Id. However, “it is not necessary ... that the crimes be identical in every detail.” Id. (citation and brackets omitted). Moreover, “standard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a ‘signature.’ ” United States v. Mack, 258 F.3d 548, 554 (6th Cir.2001). In addition to the distinctiveness of the facts or fact pattern, the court should also consider “the distance between the crimes in space and in time,” United States v. Oman, 427 F.3d 1070, 1075 (8th Cir.2005) (citation omitted) (finding that seven years between bank robberies was sufficiently close in time to admit evidence); see also United States v. Price, 516 F.3d 597, 603-04 (7th Cir.) (finding significant that two bank robberies occurred within five months of and under six miles from each other), cert. denied, — U.S.-, 129 S.Ct. 259, 172 L.Ed.2d 193 (2008) (No. 08-5383), as well as the identities of persons who were involved in the crimes, United States v. Phillips, 599 F.2d 134, 137 (6th Cir.1979) (“The fact that a criminal defendant previously participated in a series of the same crimes with a particular confederate may, in some instances, raise a fair inference identifying the defendant as the confederate’s unknown partner.”). “In evaluating the probative value of modus operandi evidence, [courts] focus on the commonalities between the charged crime and the other act — not on their differences.” Price, 516 F.3d at 604 (citation omitted).
II
Contrary to the majority’s suggestion, see maj. op. at 526-27, there was a question at trial of whether Davis sold cocaine to Hamlett. Davis placed identity at issue below because he argued that, although he was present when the crack cocaine sale took place, he was not the person who sold the drugs to Hamlett. (Whether he conceded on appeal that he was the one who sold the cocaine is, of course, of no moment to the question of whether the district court abused its discretion in admitting the evidence below, where it is un-controverted that Davis did not concede that he sold the drugs.)
The marijuana and crack cocaine transactions shared the following material features: (a) Davis acted, in effect, as a wholesaler of illegal drugs; (b) his cousin, McIntosh, acted as a broker or middleman; (c) McIntosh found (or was approached) by each buyer; (d) McIntosh made contact with 'Davis on behalf of each buyer; and (e) McIntosh arranged to meet to complete the sale. The sales involved the same two persons acting in the same relative capacities. In addition, the sales were relatively close in time (one or two months) and proximity (same city).
It is also interesting to note that Phillips, another cousin of McIntosh and Davis, was not involved in the marijuana transaction. This is important because it *531 appears that one of the defense s theories was that Phillips was involved in the crack cocaine sale and that Davis was being set up as the fall guy. The defense suggested that McIntosh was covering up Phillips’s involvement in the sale because McIntosh was closer to Phillips than he was to Davis. Yet, by showing that Davis worked with McIntosh on a prior drug sale, that sale provides some evidentiary basis to infer that Davis, and not Phillips, again acted as a wholesaler on another drug sale involving McIntosh.
Given the similar features of the two drug sales, their proximity in time and in place, and the omission of Phillips, the testimony about the marijuana sale satisfied the requirements for modus-operandi evidence and could have been properly used to show identity. Yet, again, given the Government’s decision not to pursue identity on appeal, but only intent, I agree that the drug-conspiracy conviction should be reversed.